**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANTONIO BROWN,

                          Plaintiff,

       - v -                                Civ. No. 9:06-CV-773
                                           (GTS/RFT)

SERGEANT RAIMONDO; D. WELLS, C.O.;
R. WALDMAN, C.O.; R. ZIMMERMAN, C.O.,
                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

ANTONIO BROWN
92-A-3649
Plaintiff, *Pro Se*
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

HON. ANDREW M. CUOMO                ADRIENNE J. KERWIN, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants Raimondo, Waldman and Zimmerman
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     *Pro se* Plaintiff Antonio Brown brought this civil rights action, pursuant to 42 U.S.C. § 1983,

claiming that his rights under the Eighth and Fourteenth Amendments were violated as a result of

a physical altercation with Defendant Correction Officers Waldman, Wells, and Zimmerman, under

the direction of their Supervisor, Sergeant Raimondo.  Dkt. No. 1, Compl.  As of this moment,

service of process has not been accomplished on Defendant Wells, and no appearance has been made

on his behalf in this action.[1]  Dkt. Nos. 22 & 23.

Plaintiff brings a Motion for Summary Judgment, Dkt. No. 38, which the served Defendants oppose, Dkt. No. 40, and, in turn, bring their own Motion for Summary Judgment, Dkt. No. 39, which Plaintiff opposes, Dkt. No. 42.  For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment be **denied** and Defendants' Motion for Summary Judgment be **granted**.

## I.  MATERIAL FACTS

In support of their respective Motions, both parties submitted Statements of Material Facts pursuant to this District's Local Rules.  *See* N.D.N.Y.L.R. 7.1(a)(3); Dkt. No. 38-2, Pl.'s 7.1 Statement; Dkt. No. 39-5, Defs.' 7.1 Statement.  Accordingly, the Court shall set forth the material facts and distinguish, when necessary, any controverted fact.

On June 24, 2003, Plaintiff was being transported from the Oneida Correctional Facility to the Ulster Correctional Facility.  Defs.' 7.1 Statement at ¶ 2.  All Defendants were present on the transport bus.  *Id*. at ¶ 3.  Plaintiff was seated in the middle area of the bus and, at some point during the journey, turned around in his seat and began talking to an inmate seated behind him.  Pl.'s 7.1 Statement at ¶ 2; Defs.' 7.1 Statement at ¶¶ 4 & 5.  Defendant Waldman ordered Plaintiff to turn around in his seat and be quiet.  Pl.'s 7.1 Statement at ¶ 3.  After initially complying with that order, Plaintiff was caught talking again, and was given two orders: cease talking and move to the front of the bus.  *Id*. at ¶¶ 4 & 5.  Plaintiff refused to comply with the order to move to the front of the bus.  *Id*. at ¶ 5.  Plaintiff contends that his refusal was due to the lack of leg room in the front seats of the

---

[1] The Court has allotted, to no avail, its assistance in procuring an updated address for Mr. Wells, who, upon information and belief, has retired.  Dkt. No. 25 (letter from Clerk's Office personnel to William Gonzalez, Esq., seeking updated address information for Mr. Wells).

bus and asserts that these seats are commonly known to the inmates as the "torture" seats. *Id.* at ¶ 3.

At the time of his refusal, Plaintiff was secured with handcuffs, complete with a black box placed around his center and a waist chain, which also runs through the black box. Defs.' 7.1 Statement at ¶ 11; Dkt. No. 42, Pl.'s 7.1 Statement in Opp'n to Defs.' Mot. (hereinafter Pl.'s Opp'n 7.1 Statement) at ¶ 11. Upon Plaintiff's refusal, Defendant Raimondo ordered Defendant Wells to move Plaintiff to the front of the bus. Dkt. No. 39-4, Domnick Raimondo Decl., dated Mar. 23, 2008, at ¶ 12; Brown Aff. at ¶¶ 8-9. Defendant Wells lifted Plaintiff out of his seat, and, while holding Plaintiff's handcuffs and the attached black box, physically moved Plaintiff to the front of the bus. *Id.* Defendant Waldman assisted Defendant Wells by holding Plaintiff's waist chain and shoulder and walking behind him. *Id.* at ¶¶ 11 & 12. In his un-notarized Affidavit, Plaintiff expounds that, in the process of forcibly moving him, Defendant Wells's hand slipped and scratched Plaintiff's arm. Antonio Brown Aff., dated Apr. 3, 2008, at ¶ 3; Pl.'s Opp'n 7.1 Statement at ¶ 13.

Upon reaching the front seat, Plaintiff struggled with Defendants Waldman, Wells, and Zimmerman, Defendant Zimmerman having joined the foray at that point to offer his assistance to Waldman and Wells. Defs.' 7.1 Statement at ¶¶ 13-14. Defendants claim they used necessary force in order to secure Plaintiff to the front seat. *Id.* at ¶¶ 12, 14, & 18. Throughout the entire altercation, Defendant Raimondo, who was wearing a weapon, remained in a secure area of the bus. *Id.* at ¶ 18.

Plaintiff alleges that during the effort to secure him in the seat, Defendant Zimmerman grabbed him by the throat and choked him for approximately forty-five (45) seconds, Defendant Waldman stuck his thumb in Plaintiff's mouth and started to rip it for approximately fifteen (15) seconds, and Defendant Wells smacked Plaintiff in the face. Brown Aff. at ¶ 10; Defs.' 7.1

Statement at ¶¶ 16-17; Pl.'s Opp'n 7.1 Statement at ¶¶ 17 & 19.  Plaintiff was thereafter secured with leg irons to the front seat and the Defendants all returned to their seats.  Defs.' 7.1 Statement at ¶¶ 14-15.  Plaintiff did not request any immediate medical attention, but continued to be loud and disruptive for the next two hours, while making racially charged remarks toward Defendant Wells, an African-American.  *Id.* at ¶¶ 20-21.

As a result of Plaintiff's continual disruptive behavior, Defendant Raimondo directed the bus to divert from its course and stop at Coxsackie Correctional Facility, where Plaintiff underwent a use of force physical examination.  *Id.* at ¶ 23.  The exam results indicated that Plaintiff had suffered three small scratches on his upper lip, a scratch on the right side of his neck, a scratch mark on each forearm, and rub marks on his ankles and wrists where shackles and handcuffs had been placed.  *Id.* at ¶¶ 24-26.  Plaintiff's injuries were treated with triple antibiotic ointment.[2]  *Id*. at ¶ 24.  Plaintiff did not continue on the transport bus to Ulster, but instead remained at Coxsackie for a period of time.  *Id.* at ¶ 28.  Following the incident, Defendant Raimondo authored a misbehavior report charging Plaintiff with (1) disobeying a direct order; (2) creating a disturbance; (3) making a threat

---

[2] In Plaintiff's Opposition 7.1 Statement, he asserts that he complained to the nurse at Coxsackie about soreness in his neck and back, but that she failed to give him medication for his discomfort and failed to note his complaints in the medical report.  Pl.'s Opp'n 7.1 Statement at ¶ 22.  Nevertheless, because he was already receiving pain medication, he asserts that upon return to his facility, he continued to take the pain killers to soothe his neck and back pain.  *Id*. at ¶ 23.  He seemingly accuses the nurse of fabricating medical reports when she suggested that his scratch injuries could be self-inflicted, as evidenced by his extremely long and dirty fingernails.  *Id*. at ¶¶ 23-31.  These allegations are consistent with a claim for improper medical treatment, though such charge is not alleged in the Plaintiff's Complaint, nor is the Coxsackie nurse a Defendant in this action.

The Court notes that opposition papers are not the proper vehicle to instill new causes of action or add new defendants.  *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)); *Harvey v. New York City Police Dep't*, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997) (disregarding plaintiff's new claims asserted in opposition to summary judgment motion due to the inappropriateness).  If Plaintiff wishes to supplement or amend his Complaint, he must follow the proper procedural mechanisms set forth in the Federal Rules of Civil Procedure and the Local Rules of Practice for the Northern District of New York.  Any relief sought to that end must be in the form of a motion, otherwise the Clerk of the Court will not accept the filing.

of violence; (4) making threats; (5) causing physical or verbal interference; (6) harassing employees; and (7) failing to follow staff directions relating to his movement. *Id*. at ¶ 29.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed

allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . .

. [and] a district court is not required to grant judgment as a matter of law for one side or the other."
*Heublein, Inc. v. United States*, 996 F.2d at 1461.

### B.  Failure to Serve Defendant Wells

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[3]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

In this case, there is no indication that Defendant Wells was properly served, notwithstanding the fact that his name appears on Defendants' Notice of Appearance. Dkt. No. 30.  The inclusion of Defendant Wells in such Notice, we believe, was probably a mistake.  In support of the Court's deducement, we note that the Defendants' Answer does not include Defendant Wells and Defendants' then-attorney took special care to alert the Clerk of the Court of the error on the Docket Report wherein it had been noted that he appeared on behalf of Defendant Wells.  Dkt. Nos. 18, Ans., & 19, Defs.' Lt., dated Feb. 27, 2007.  Furthermore, Defendants' counsel does not include Defendant Wells in the Motion for Summary Judgment and makes specific note in the Memorandum of Law of the Plaintiff's failure to perfect service on Wells. Dkt. No. 39-6 at p. 3 n.2.  Lastly, the Docket sheet contains other references to the fact that Defendant Wells has not been served with this action.  *See* Dkt. No. 22 (Notice of Summons Returned Unexecuted); Dkt. No. 25 (Lt. from Clerk's Office personnel).  Under this circumstance, the Court has not obtained proper jurisdiction over

---

[3] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

Defendant Wells.  The Federal Rules provide that the Court may permit Plaintiff an extension of time to serve this Defendant upon a showing of good cause for failure to serve within the stated time period, or, we may, after providing notice to Plaintiff, dismiss the claims against Wells without prejudice.  FED. R. CIV. P. 4(m).  However, given the general consensus of the material facts in this case, and because we find, as explained more fully below, that based upon such facts, Plaintiff's claim against Wells lacks merit, granting Plaintiff an opportunity to properly serve this Defendant would be futile.  Thus, we begin our review of the merits of Plaintiff's Eighth Amendment claims.

### C.  Excessive Force Claims

#### 1.  Defendants Waldman, Wells, & Zimmerman

Plaintiff claims he was assaulted and brutalized by Defendants Waldman, Wells, and Zimmerman in violation of the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)).  To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components:  (1) subjectively, that the Defendant acted wantonly and in bad faith, and (2) objectively, that the Defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)).

Regarding the objective element of our Eighth Amendment analysis, we note initially that " a *de minimis* use of force will rarely suffice to state a constitutional claim[.]"  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  In that respect, "[n]ot every push or shove, even if it may later

seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."
*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at
10).  However, the malicious use of force to cause harm constitutes an Eighth Amendment violation
*per se* because in such an instances "contemporary standards of decency are always violated."
*Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9).  For example,
"when a prison guard applies force against a prisoner that poses no reasonable threat simply because
the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a *per se*
violation of the Eighth Amendment occurs."  *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216
(N.D.N.Y. 2001) (citation omitted).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith
effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v.
McMillian*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson
v. Glick*, 481 F.2d at 1033.  To determine whether a defendant acted maliciously, several factors
should be examined, including "the extent of the injury and the mental state of the defendant, as well
as 'the need for the application of force; the correlation between that need and the amount of force
used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to
temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)
(quoting *Romano v. Howarth*, 998 F.2d at 105).

In the case at bar, Plaintiff admits he willingly disobeyed at least two direct orders issued to
him by Defendant Raimondo – to stop talking and to move to the front of the bus.  Pl.'s 7.1
Statement at ¶ 3 ("After Plaintiff was caught taking again, and Plaintiff refused to move to the 'front
of the bus.'"); Brown Aff. at ¶¶ 5 ("Plaintiff was caught talking again.") & 7 ("Plaintiff refused to

move to the front of the bus and instead was willing to receive a misbehavior report."). Plaintiff offers explanations to the Court as to why he disobeyed direct orders,[4] but the uncontested fact remains that he indeed disobeyed an officer's direct orders, something he as an inmate lacks the discretion to do. *Torres v. Selsky*, 2005 WL 948816, at *8 (N.D.N.Y. Apr. 25, 2005); *see also Kalwasinski v. Artuz*, 2003 WL 22973420, at *3 (S.D.N.Y. Dec. 18, 2003) (stating that the inappropriateness of an order does not excuse noncompliance therewith, even when the inmate feels the order violates his constitutional rights). An inmate in the State of New York who objects to a direct order from a correctional officer acting within the scope of his official duties, whether that order is authorized or not, has but one constitutionally protected recourse: to file a grievance. *See Keith v. Coombe*, 653 N.Y.S. 2d 401 (N.Y. App. Div. 3d Dep't 1997) (stating "Petitioner could have avoided [a] disciplinary proceeding by obeying the order and then filing a grievance."). In the face of Plaintiff's refusals, the Defendants undertook the use of force to ensure compliance with the Sergeant's direct orders.

We do not mean to imply that Plaintiff's willing disobedience entitled the Defendants to use excessive force. But, his behavior warranted the use of force to ensure that order was maintained and officers are indeed authorized to use necessary force under such circumstances so as to obtain that security objective. Based on the facts before the Court, no rational juror could conclude that more than minimally necessary force was employed. Plaintiff's Use of Force Medical Report indicates that the sole injuries suffered by Plaintiff as a result of this incident were small scratches,

---

[4] Plaintiff asserts he refused to stop talking because he believed he was within his right to talk on the bus by virtue of the Department of Corrections Transportation Manual, which he claims authorizes inmates to engage in such activity. Pl.'s Opp'n 7.1 Statement at ¶ 7. Plaintiff further explains that he refused to move to the front of the bus because the front seats are known as the "punishment" or "torture" seats, and are called so because of their tendency to cause an inmate discomfort due to the close proximity of a steel gate to the seat. *Id.* at ¶¶ 8-10.

*-10-*

and these injuries may have been self-inflicted due to the length of Plaintiff's fingernails.  Dkt. No. 39-3, Adriene J. Kerwin Affirm., dated Apr. 3, 2008, Ex. D  at p. 46.  The findings of this medical report are  inconsistent with the type of injuries one would expect Plaintiff to have sustained as a result of being choked for forty-five seconds and having his mouth ripped open for fifteen seconds.  Pl.'s Opp'n 7.1 Statement at ¶ 19.  The use of force on Plaintiff, utilized to assure his compliance with direct orders, appears to have been done without any malicious intent.  Plaintiff's Eighth and Fourteenth Amendment claims against Defendants Wells, Waldman, and Zimmerman are therefore without merit and should be **dismissed**.

### 2. Defendant Raimondo

Defendant Raimondo did not physically participate in the physical altercation with the Plaintiff, but rather supervised and directed Defendants Waldman, Wells, and Zimmerman to use such force to ensure compliance with his orders.  Pl.'s Opp'n 7.1 Statement at ¶¶ 5-6 & 39; Defs.' 7.1 Statement ¶¶ 16-18.  As per the findings above, since no claim exists against Defendants Waldman, Wells, or Zimmerman, the actual physical perpetrators, then no claim could exist against Defendant Raimondo based on supervisory liability.[5]  *See, e.g., Murphy v. New York Racing Ass'n Inc.*, 76 F. Supp. 2d 489, 500 (S.D.N.Y. 1999) (noting that in stating a valid § 1983 claim under a theory of supervisor liability, a plaintiff must first show that the supervisor's supervisees violated the plaintiff's constitutional rights).

---

[5] Because *respondeat superior* does not apply in § 1983 actions, personal involvement is essential in establishing a constitutional violation.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  A supervisory defendant may be personally involved in a constitutional deprivation if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).  Because we found no unconstitutional or unlawful conduct ensued, no supervisory liability exists.

## III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Plaintiff's Motion for Summary Judgment (Dkt. No. 38) be **denied** and Defendants' Motion for Summary Judgment (Dkt. No. 39) be **granted** and Plaintiff's entire Complaint be dismissed; and it is further.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   February 25, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-12-*